**STATE OF NEW JERSEY, DEPT. OF EDUCATION, Petitioner,**

v.

**Shirley HUFSTEDLER, Secretary of Education, etc., Respondent.**

**No. 80–1991.**

United States Court of Appeals, Third Circuit.

Argued Oct. 26, 1983.

Decided Dec. 27, 1983.

Rehearing and Rehearing En Banc Denied Feb. 17, 1984.

Irwin I. Kimmelman, Atty. Gen. of N.J., Michael R. Cole, Mary Ann Burgess, Asst. Attys. Gen. (argued), for petitioner; Jayne LaVecchia, Regina Murray Mahoney, Deputy Attys. Gen., Trenton, N.J., on brief.

Stephen H. Freid, Philip H. Rosenfelt (argued), General Counsel, U.S. Dept. of Education, Washington, D.C., for respondent.

Before ADAMS, HUNTER and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The State of New Jersey asks us to review a final decision of the Secretary of Education that New Jersey refund over $1 million granted by the federal government under Title I of the Elementary and Secondary Education Act of 1965 (ESEA), 20 U.S.C. § 241a *et seq.* (1976). These funds had been allocated to local educational agencies under State supervision to meet the special needs of "educationally deprived" children in areas with high concentrations of children from low-income families. *Id.* at § 241a. The dispute between the State and the Secretary has been explained in considerable detail in *New Jersey v. Hufstedler,* 662 F.2d 208 (3d Cir.1981), where this Court held that the Secretary did not have the authority to recover Title I funds allocated before the Education Amendments of 1978, which specifically authorize the recovery of misspent funds.

In *Bell v. New Jersey and Pennsylvania,* —— U.S. ——, 103 S.Ct. 2187, 76 L.Ed.2d 313 (1983), the Supreme Court reversed the decision in *New Jersey v. Hufstedler, supra,* and remanded the case to this Court so that we might "review the challenges raised by [the] State" and determine whether the Secretary's decision "is supported by substantial evidence and by the application of proper legal standards . . . ." *Id.* at 2198. Having decided only that states can be held liable for the misuse of funds under the Education Act, the Supreme Court left it to us to determine, at least in the first instance, whether the substantive standards of the 1978 amendments apply to grants approved under earlier standards. *Id.* at 2192 n. 6. We hold that the later standards do apply and remand the case to the Secretary for specified factual determinations.

I

When an auditor's report first questioned Newark's allocation of Title I grants to various "school attendance areas," the stat-

utory standard for disbursing such funds provided that Title I payments be used for projects "designed to meet the special educational needs of educationally deprived children in school attendance areas having high concentrations of children from low-income families." 20 U.S.C. § 241e(a)(1) (1976). This broad standard was interpreted as covering (1) attendance areas in which the number of children from low-income families was as large as, or larger than, the average number of such children in the various attendance areas of the school district and (2) attendance areas in which the percentage of such children was as large as, or larger than, the percentage in the school district. 45 C.F.R. § 116.17(d) (1972). In determining the Title I eligibility of its attendance areas in 1970–72, Newark used a method of calculating percentages that arguably overstated the relative size of the class of students from low-income families.

Throughout this litigation, New Jersey has maintained that the regulations implementing ESEA defeat the legislative goal of meeting the special needs of the educationally deprived. Attendance areas with concentrations of children from low-income families as high as thirty percent have been declared ineligible for Title I aid, simply because they are situated in school districts with even higher levels of poverty. To remedy such inequities, Congress passed a series of amendments to ESEA in 1978 that, under certain circumstances, permit local educational agencies to declare a school attendance area eligible for Title I funds if at least twenty five percent of the children in that area come from low-income families.

20 U.S.C. § 2732(a)(1) (Supp. V. 1981). New Jersey requests that we measure the eligibility of Newark's school attendance areas to receive Title I funding according to this newer standard.[1]

## II

A federal court or administrative agency must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1964). There is little to suggest that such an application would result in manifest injustice here, and nothing in the 1978 amendments or the legislative history indicates that the amendments were not intended to be applied retroactively. The legislative record is replete with evidence that Congress enacted these amendments to correct the injustice that the earlier eligibility standards worked on areas with high concentrations of low income families.[2] In the proceeding before us, for example, three Newark attendance areas with a "low income percentage" of over 25 percent and seven with a percentage over 30 percent were declared ineligible for Title I aid because the district-wide percentage of children from low-income families was 33.9 percent.

Two considerations inform our judgment that the retroactive application of the new eligibility tests is appropriate. First, the 1978 amendments to the ESEA were designed to correct regulations that frustrated the basic objectives of the Title I

1. New Jersey raises this argument for the first time in its brief upon remand. Generally, federal appellate courts do not consider issues that have not been passed on by the agency or district court whose action is being reviewed. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). This is a rule of discretion, rather than jurisdiction, however, and our practice has been to hear issues not raised in earlier proceedings when special circumstances warrant an exception to the general rule. *See e.g., Selected Risks Ins. Co. v. Bruno,* 718 F.2d 67 (3d Cir.1983); *Abrams v. U.S. Dept. of Navy,* 714 F.2d 1219 (3d Cir. 1983). Since New Jersey raises an issue of

national importance, which is singularly within the competence of appellate courts and is not predicated on complex factual determinations, we will consider the State's argument as to the retroactivity of the 1978 ESEA amendments.

2. Elementary and Secondary Education: Hearings on H.R. 15 Before the Subcomm. on Elementary, Secondary, and Vocational Education of the House Comm. on Education and Labor, Part 16, Services and Student Development; Part 18: Administration of Title I of ESEA; Part 19: Title I—Funds Allocation, 95th Cong., 1st Sess. 194–197, 134–141, 857–861 (1977).

program. Since this legislation is remedial, the presumption of retroactivity is particularly strong. *See Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). Second, the case before us involves a public matter of great national concern and is argued on direct appeal by two public agencies. This is not a routine private lawsuit in which a retrospective application of a law would disadvantage a private party who had relied on a settled body of private law. *See Bradley, supra,* 416 U.S. at 716–721, 94 S.Ct. at 2018–2021. Our decision to apply the 1978 amendments retroactively might make it more difficult, as the Secretary argues, to recover "misspent" funds, but we believe that Congress determined in 1978 that the Department's method for allocating Title I funds thwarted the basic goals of that program.

### III

Our decision today, unfortunately, will not bring this protracted controversy to an end. While the record does indicate that several of the school attendance areas in question had low-income percentages in excess of 25 percent, these areas could qualify for Title I funds in any given year under the newer legislation, only if the total amount of funds expended under Title I and similar State programs equaled or exceeded the total amount expended from the combined sources in the preceding year. 20 U.S.C. § 2732(a)(1) (Supp. V 1981). Since the record before us does not allow for such a calculation, the Secretary of Education will be required to make this determination for each school attendance area that had a Title I project in the relevant years.

Accordingly, this matter will be remanded to the Secretary for proceedings consistent with this opinion.