

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-1999

# Kleissler v. US Forest Ser

Precedential or Non-Precedential:

Docket 98-3352

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Kleissler v. US Forest Ser" (1999). *1999 Decisions.* Paper 180.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/180

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 30, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3352

JAMES KLEISSLER; SUSAN CURRY; ARTHUR CLARK;
RODGER CLARKE; ELOISE GLENN; MICHAEL KAIZAR;
HEARTWOOD, INC.,

      Appellants

v.

UNITED STATES FOREST SERVICE; MICHAEL P.
DOMBECK, Chief Forester for the Eastern Region, United
States Forest Service; ROBERT T. JACOBS, Regional
Forester for the Eastern Region - United States Forest
Service; JOHN PALMER, Forest Supervisor for the
Allegheny National Forest - United States Forest Service;

PAYNE FOREST PRODUCTS, INC.;
SPILKA WOOD PRODUCTS COMPANY,

      (Intervenors Defendants in D.C.)

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 97-cv-02187)
District Judge: The Honorable William L. Standish

ARGUED January 13, 1999

BEFORE: Nygaard, Alito, and Lewis, Circuit Judges.

(Filed: June 30, 1999)

William V. Luneburg, Esq. (Argued)
University of Pittsburgh
School of Law
3900 Forbes Avenue
Pittsburgh, PA 15260

 Attorney for Appellants

John R. Fernan, Esq.
Cartwright, Fernan & Whitney
P.O. Box 467
Ridgway, PA 15853

Bonnie R. Schlueter, Esq. (Argued)
Office of United States Attorney
633 United States Post Office
 & Courthouse
Pittsburgh, PA 15219

David L. McClenahan, Esq.
James E. Scheuermann, Esq.
William J. Labovitz, Esq.
Daniel P. Trocchio, Esq. (Argued)
Kirkpatrick & Lockhart
1500 Oliver Building
Pittsburgh, PA 15222

 Attorneys for Appellees

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Plaintiff/Appellant Kleissler1 appeals the District Court's

_____

1. We refer to appellant as Kleissler for ease of reference. The term Kleissler includes individuals James Kleissler, Susan Curry, Arthur Clark, Rodger Clarke, Eloise Glenn and Michael Kaizar, who regularly enjoy and use the Allegheny National Forest for study, recreation and aesthetic enjoyment. Additionally, James Kleissler and Arthur Clark are active members of the Allegheny Defense Project, a regional organization dedicated to, inter alia, restoring the ecological integrity of the Allegheny
National Forest. Our reference to "Kleissler" also encompasses Heartwood, Inc., a non-profit Indiana corporation whose objectives

summary judgment. The District Court concluded that Kleissler failed to exhaust administrative remedies as required under section 212(e) of the United States Department of Agriculture Reorganization Act and section 215 of title 36 of the Code of Federal Regulations governing Forest Service regulations.[2] In its Rule 54(b) certification order, the District Court made "an express finding that the court's . . . memorandum and order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal may advance the ultimate termination of the litigation." Kleissler v. United States Forest Serv., No. 97-2187, slip. op. at 3 (W.D. Pa. filed June 8, 1998). We agree.

Because the District Court's summary judgment resulted from its interpretations of federal regulations, statutes and case law, we exercise plenary review. See Venen v. United States, 38 F.3d 100, 101 (3d Cir. 1994). When reviewing scientific and technical data we defer to thefindings and expertise of the Forest Agency. See Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 377-78, 109 S. Ct. 1851, 1861 (1989); Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, 462 U.S. 87, 103, 103 S. Ct. 2246, 2255 (1983). We will only overturn the Forest Service's Finding of No Significant Impact if that decision was arbitrary and

---

include the protection of bio-diversity and ecosystem integrity on public and forested lands in Pennsylvania and the central hardwood region of the United States. Its members are Pennsylvania residents who use and enjoy the educational, recreational and aesthetic opportunities offered by the areas of the Allegheny National Forest that are the subject of the Minister Watershed and South Branch Willow Creek projects.

2. This appeal is limited to addressing whether Kleissler exhausted his administrative remedies and the effect of that decision as to Kleissler's Landscape Corridor claims as they concern areas of the Allegheny National Forest encompassed within the Minister Watershed and South Branch Willow Creek projects. We note that the District Court presently has pending before it a claim by Kleissler that the Forest Service adopted a landscape approach to preservation of old growth forests and biodiversity on the Allegheny National Forest without complying with the National Environmental Protection Act and the National Forest Management Act. Accordingly, we are not deciding any issues that pertain to that claim.

capricious. See Marsh, 490 U.S. at 375–77, 109 S. Ct. at 1860–61; Township of Springfield v. Lewis, 702 F.2d 426, 442 (3d Cir. 1983). Applying this standard, we will affirm.

I.

Factual Background

The Allegheny National Forest is approximately 510,530 acres in size and located in Elk, Forest, McKean and Warren counties in northwestern Pennsylvania. Each national forest is required by federal statute to have a Land and Resource Management Plan. The Allegheny National Forest is currently being managed by the United States Forest Service under a Land and Resource Management Plan adopted in 1986 which can be amended by following the procedures and requirements of the National Environmental Policy Act ("NEPA").3  Under this plan, the Allegheny National Forest is divided into Management Areas which share a common management direction to achieve a common goal. Forest management and planning is divided into two main levels: decisions concerning individual timber cutting projects, e.g., the Minister Watershed and South Branch projects, and decisions concerning forest management as a whole, i.e., Land and Resource Management Plans.

Procedural History

In accordance with 36 C.F.R. S 215.5, the Forest Service mailed letters concerning the Minister Watershed and South Branch projects to notify the public of the proposed projects and provide an opportunity for public comment. After receiving and reviewing various responses during the thirty-day comment period and the Environmental Assessments for the respective projects, the District Ranger of the Bradford Ranger District of the Allegheny National

_____

3. NEPA requires that an environmental impact statement be prepared by the respective government agency before approval of any major federal action "significantly affecting the quality of the human environment." 42 U.S.C. S 4321. An agency determines whether the action will significantly affect the quality of the human environment by preparing an environmental assessment under 40 C.F.R. SS 1501.4(b) and (c).

4

Forest approved the final Environmental Assessments and issued Decision Notices and Findings of No Significant Impact for each project. As to both projects, the District Ranger concluded that implementing the plans "is not a major federal action, individually or cumulatively, and will not significantly affect the quality of the human environment."

Kleissler filed administrative appeals for both the Minister Watershed and South Branch projects. He raised the following four claims and concerns in the notice of appeal for the Minister Watershed project: (1) the adverse effects on the Indiana Bat; (2) the potential killing of migratory birds or disturbance of their habitats as a violation of the Migratory Bird Treaty Act; (3) the need to amend the Land and Resource Management Plan for the Allegheny Forest to provide population management objectives for species in the project area; and (4) the Forest Service's failure to respond adequately to public comments. After an informal appeal disposition meeting, the Regional Forester affirmed the decision of the District Ranger. This decision was the final administrative decision by the Department of Agriculture concerning the project.

Kleissler's administrative notice of appeal for the South Branch project was more extensive. His claims and concerns for this project can be categorized as follows: (1) the failure to consider recreational values; (2) the lack of statistics on the level of mortality due to insects and disease; (3) the need for dead trees in the forest for wildlife refuge; (4) the impacts on microorganisms; (5) the nutrient loss to the soil from the removal of trees from the forest; (6) the cumulative impact of the Porter Hollow and South Branch projects; (7) the effect of herbicides; (8) concerns regarding the adverse effect on the Indiana bat's habitat; (9) the killing of birds or disturbance of habitats as a violation of the Migratory Bird Treaty Act; (10) the need for population and management objectives for sensitive species; and (11) the need to consider other alternatives and mitigation measures. Once again, the Regional Forester conducted an informal appeal disposition meeting and affirmed the decision of the District Ranger. Like the decision for the Minister Watershed project, this was the

final administrative determination by the Department of Agriculture concerning the South Branch project.

Dissatisfied with these results, Kleissler filed a complaint in the United States District Court for the Western District of Pennsylvania seeking to enjoin the Minister Watershed and South Branch projects. In brief, Kleissler's complaint alleged that, with regard to the Minister Watershed project, the designation of 3,923 acres for inclusion in a"landscape corridor" represents a change in the Land and Resource Management Plan for the Allegheny National Forest requiring an amendment to the Plan only after adequate opportunity for public comment and an environmental impact statement. The complaint also alleged: (1) an adverse effect of even-aged timber cutting; (2) an adverse effect resulting from the use of herbicides in 569 acres; (3) a failure to conserve soil and water; (4) a failure to maintain diversity of plant and animal communities; (5) a need to protect endangered species such as water shrews, blue herons, bald eagles, Indiana bats and goshawks; (6) recreational impairment; (7) a need for environmental impact statement; (8) an inadequate range of alternatives and mitigation measures; and (9) an inadequate environmental assessment.

In sum, the allegations raised in federal court concerning the South Branch project can be grouped into two main complaints: that the Forest Service violated the National Forest Management Act,4 and that the Forest Service violated NEPA.5

_____

4. Kleissler contends that the Forest Service violated the National Forest Management Act by failing to fulfill its duty to: conserve soil and water; maintain the diversity of plant and animal communities; protect the habitat of endangered species; consider the "potential effects on residual trees and adjacent stands"; protect "water quality and quantity and wildlife and fish habitat, forage production, recreation uses, and aesthetic values"; "consider alternatives to even-aged management for the project area"; consider the "environmental, biological, aesthetic, and other impacts of the proposed even-aged cutting";"limit the use of even-aged management to exceptional circumstances"; and "insure that authorized logging will be carried out in a manner consistent with the protection of soil, watershed, fish, wildlife, recreation, and aesthetic resources, and regeneration of the timber resource."
5. Kleissler contends that the Forest Service violated NEPA by (1) failing to file an environmental impact statement based on: the size of the area

The District Court concluded that the issues raised in the administrative notices of appeal differed significantly from the claims raised in the District Court complaint. Therefore, the court granted summary judgment in favor of the Forest Service and other defendants.

II.

The first question is whether Kleissler has exhausted administrative remedies. Plaintiffs generally must exhaust administrative remedies. See Southwestern Pa. Growth Alliance v. Browner, 121 F.3d 106, 112 (3d Cir. 1997). It is axiomatic that we cannot review "issues that have not been passed on by the agency . . . whose action is being reviewed." New Jersey v. Hufstedler, 724 F.2d 34, 36 n.1 (3d Cir. 1983), rev'd on other grounds, 470 U.S. 632, 105 S. Ct. 1555 (1985). As we noted in Southwestern Pennsylvania, federal court consideration of the myriad of issues raised in a complaint "without the benefit of the [agency's] expert input . . . would undermine a fundamental principle of our system of judicial review of administrative decisions." 121 F.3d at 112. We follow this approach because it will: (1) avoid "premature interruption of the administrative process," (2) allow the agency to"develop the necessary factual background," (3) give the agency the "first chance" to exercise its discretion, (4) properly defer to the agency's expertise, (5) provide the agency with an opportunity "to discover and correct its own errors," and (6) deter the "deliberate flouting of administrative processes." McKart v. United States, 395 U.S. 185, 194–95, 89 S. Ct.

_____

of logging, "the exclusive use of even-aged management," the use of herbicides, the potential impact on "specially protected animal species, including the Indiana Bat," the degradation of streams, the impact on recreational activities, the cumulative effect of the South Branch project with other "timber-cutting projects in the [Allegheny National Forest]" and "the extent of public interest"; (2) failing to consider the South Branch project and Mortality II project together as major federal action requiring an environmental impact statement; (3) failing to consider alternatives; (4) performing an inadequate environmental assessment; (5) improperly "tiering" the environmental assessment; and (6) acting arbitrarily by failing to consider relevant factors and other alternatives.

1657, 1662–63 (1969). Moreover, we "usurp[ ] the agency's function when [we] set[ ] aside the administrative determination upon a ground not theretofore presented" to the agency. Unemployment Compensation Comm'n v. Aragon, 329 U.S. 143, 155, 67 S. Ct. 245, 251 (1946).

Here, the statute is very specific. In conjunction with the exhaustion provisions, Forest Service regulations require that "the Responsible Official must consider all written comments," 36 C.F.R. S 215.6(c)(2)(emphasis added), "a person must submit a written appeal to the Appeal Deciding Officer" to have objections considered, id. S 215.13(a) (emphasis added), "interested parties must submit written comments to the Appeal Reviewing Officer," id. S 215.13(e) (emphasis added), and administrative appeal notices must "provide sufficient written evidence and rationale to show why the Responsible Official's decision should be remanded or reversed." Id. S 215.14 (emphasis added). Mere vague references or conclusory statements do not meet the statutory requirements. Rather,

> an appeal must . . . (4) identify the specific change(s) in the decision that the appellant seeks or portion of the decision to which the appellant objects; (5) state how the Responsible Official's decision fails to consider comments previously provided, either before or during the comment period specified in S 215.6 and, if applicable, how the appellant believes the decision violates law, regulation, or policy.

Id. S 215.14.

The U.S.D.A. Reorganization Act of 1994, section 212(e) provides that "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against (1) the Secretary; (2) the Department; or (3) an agency, office, officer, or employee of the Department." 7 U.S.C. S 6912(e). Importantly, 36 C.F.R. S 215.20 advises that "unless waived in a specific case, it is the position of the Department of Agriculture that any filing for Federal judicial review of a decision subject to review under this part is premature and inappropriate unless the plaintiff has first sought to invoke and exhaust the procedures available under this part."

8

Similarly, 36 C.F.R. S 217, which governs the appeal of National Forest Land and Resource Management Plans, requires written notices of appeal that must

> [i]dentify specifically that portion of the decision or decision document to which the requestor objects; [s]tate the reasons for objecting, including issues of fact, law, regulation, or policy, and, if applicable, specifically how the decision violates law, regulation, or policy; and [i]dentify the specific change(s) in the decision that the appellant seeks

36 C.F.R. SS 217.8, 217.9.

And,

> [t]he review of decisions appealed under this part focuses on the documentation developed by the Deciding Officer in reaching decisions. The records on which the Reviewing Officer shall conduct the review consists of the notice of appeal, any written comments submitted by intervenors, the official documentation prepared by the Deciding Officer in the decision-making process, the Deciding Officer's letter transmitting those documents to the Reviewing Officer, and any appeal related correspondence, including additional information requested by the Reviewing Officer pursuant to S 217.13 of this part.

Id. S 217.15 (emphasis added). Again, the Department of Agriculture notes that its position is "that anyfiling for Federal judicial review of a decision subject to review under this part is premature and inappropriate unless the plaintiff has first sought to invoke and exhaust the procedures available under this part. This position may be waived upon written a written finding by the Chief [of the Forest Service]." Id. S 217.18.

The policy underlying these regulations is simple: objections and issues should first be reviewed by those with expertise in the contested subject area. See McKart, 395 U.S. at 194-96, 89 S. Ct. at 1663-64; Southwestern Pennsylvania, 121 F.3d at 112. Proper written notice fully alerts the responsible agency to the appellant's objections. See Glisson v. United States Forest Serv., 55 F.3d 1325,

9

1327 (7th Cir. 1995) (noting that an "agency cannot evaluate the strength of the objection" if the objector has not given a statement of reasons).

Kleissler urges us to take a flexible and liberal view of the exhaustion of remedies requirement such that any reference during the administrative appeals process to issues related to claims set forth in the federal complaint satisfies the exhaustion requirement. Kleissler specifically asks us to consider the audiotaped discussions held during the informal disposition meetings. The statute simply does not permit us to do that. Moreover, to do so wouldflex the statutes and regulations beyond recognition. Our view can be neither restrictive nor expansive, rather, we must be precise in following the law. It is abundantly clear by the plain language of the applicable statutes and regulations that the Forest Service must be given written notice of an objector's challenges. Therefore, we will consider only those allegations and comments contained in written documentation and correspondence to the Forest Service. Moreover, we hold that the claims raised at the administrative appeal and in the federal complaint must be so similar that the district court can ascertain that the agency was on notice of, and had an opportunity to consider and decide, the same claims now raised in federal court.6 We are admonished that:

_____

6. Kleissler asserts that because he was unrepresented by counsel during the administrative process preceding approval of the Minister Watershed and South Branch projects, we should relax the harshness of the exhaustion requirements. This contention is unavailing. We see no reason to relax a defined standard simply because the parties who failed to follow the law chose not to be represented by counsel during the administrative appeal. Kleissler is not a neophyte to the administrative appeal process. To the contrary, the Allegheny Defense Project, of which Kleissler is a founding member, professed that it employs the "Paper Monkeywrench" tactic to protect the ecological integrity of the region. The group's website described its "Paper Monkeywrench" methods as responding to scoping letters "with comments and . . . public input" such that the Forest Service has "more work to do." The site also instructed that another common tactic is to appeal the final decision of the Forest Service "within 45 days trying to demonstrate either how [the Forest Service] ha[s] not followed the Forest Plan or how they have

10

administrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that `ought to be' considered and then, after failing to do more to bring the matter to the agency's attention, seeking to have that agency determination vacated.

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 553-54, 98 S. Ct. 1197, 1217 (1978).

A. Minister Watershed Project

As for the Minister Watershed project, Kleissler's administrative notice of appeal is limited in scope to claims concerning the Indiana Bat, the Migratory Bird Treaty Act, the failure of the Land and Resource Management Plan to address the needs for "sensitive species in the project area," and the failure to respond to public concerns and comment. In contrast, the federal complaint alleges violations of NEPA and the National Forest Management Act predicated on alternatives to even-aged management and the need for an Environmental Impact Study. As the District Court correctly observed, Kleissler's federal action chiefly alleges that an Environmental Impact Statement of the Minister Watershed project must be prepared because of:

> (1) the Minister Project's relationship to the landscape corridor; App. 3212-15; Summary Judgment Brief at II.A.;
>
> (2) the likelihood of cumulative or synergistic adverse environmental effects attributable to forest fragmentation; App. 3215-16; S.J. Br. at II.B;
>
> (3) the relationship of the Minister Project to the North Country National Scenic Trail; App. 3216-17; S.J. Br. at II.C.;

_____

violated some aspect of NEPA." Finally, the Defense Project encouraged its web site readers to "ask [the Allegheny National Forest Supervisor] to put you on the mailing list for ALL districts of the[Allegheny National Forest] . . . . Now you can start your own Paper Monkeywrenching!" App. 3432.

11

(4) concerns with respect to herbicides and water quality; App. 3217–19; S.J. Br. at II.D.; and

(5) the public comments submitted in response to the Draft Environmental Assessment; App. 3220–21; S.J. Br. at II.E.

See Kleissler, No. 97–2187, slip op. at 21–22.

These claims are not the same. These objections were raised during the administrative appeal:

(1) The Forest Service violated the Endangered Species Act and NEPA by insufficiently analyzing the potential effects of the proposed timber sale on the Indiana Bat. App. 3030–34; Notice at 2–13;

(2) The Forest Service violated the Migratory Bird Treaty Act by permitting logging to occur during the nesting season for migratory birds, app. 3041–42, and violated NEPA by failing to prepare an environmental impact statement in connection with its decision on the Migratory Bird Treaty Act. App. 3042–43;

(3) The Forest Service failed to amend the Land and Resource Management Plan to provide population objectives for sensitive species in the project area. App. 3043–44;

(4) The Forest Service violated NEPA by failing to adequately respond to public comments. App. 3044–46.

At most, the claims raised in federal court were only vaguely and cryptically referred to, if at all, during the administrative appeal. Therefore, the required correlation is sorely lacking. Thus, we conclude that Kleissler has failed to meet the statutorily imposed exhaustion requirements as to the Minister Watershed project claims.

B. South Branch Project

The South Branch project claim is arguably more difficult, in part because Kleissler raised more objections and challenges to the South Branch project than the Minister Watershed project during the administrative

12

appeal. Nevertheless, we conclude that although numerous, the challenges and objections raised during the administrative appeal again differ from the claims raised in federal court, and the administrative agency had no opportunity to develop an adequate record for review. As the District Court correctly observed, Kleissler raised the following objections in the administrative notice of appeal for the South Branch Project:

(1)  The Forest Service failed to include in th e Environmental Assessment an analysis of the economic impact of recreation on the local economy. App. 3088-89; Notice at 2-3;

(2)  The Forest Service failed to sufficientl y define "significant impact" in the Decision Notice and Finding of No Significant Impact and failed to conclude that decreased forest health due to edge effect is significant. App. 3089; Notice at 3;

(3)  The Forest Service violated NEPA by failin g to be sufficiently well-informed on the effects of forest disease and pests on the forest, app. 3089-90; Notice at 3-4, and on the effects of logging. App. 3090-91; Notice at 4-5;

(4)  The Forest Service failed to sufficientl y consider the effects of logging on microorganisms, app. 3091; Notice at 5, the loss of nutrients from logging, see id., and the cumulative impact of the Porter Hollow Project. App. 3092; Notice at 6;

(5)  The amount of dead wood and trees needed f or wildlife nesting will be insufficient. App. 3091-92; Notice at 5-6;

(6)  The Forest Service has made inconsistent statements on the effects on fertilizer and herbicides; App. 3092; Notice at 6;

(7)  The Forest Service's information on nonmerchantable versus merchantable trees is unreliable and inconsistent, see id.;

(8)  The Forest Service violated NEPA by failin g to conduct site-specific analyses for activities

13

occurring outside of the project area such as road construction, see id.;

(9) The Forest Service failed to consider pote ntial fragmentation caused by roads. App. 3093; Notice at 7;

(10) The Forest Service failed to observe beaver dams, see id.;

(11) The Forest Service violated the appeal regulations by restricting public comments to "site-specific" comments. App. 3093-94; Notice at 7-8;

(12) The Forest Service violated the Endangered Species Act and NEPA by insufficiently analyzing the potential effects on the Indiana Bat. App. 3094-3110; Notice at 8-24;

(13) The Forest Service violated the Migratory Bird Treaty Act, app. 3110; Notice at 24, and NEPA by failing to prepare an Environmental Impact Statement in connection with its decision on the Migratory Bird Treaty Act. App. 3110-11; Notice at 24-25;

(14) The Forest Service failed to amend the Land and Resource Management Plan to provide population objectives for sensitive species. App. 3111-12; Notice at 25-26.

Kleissler, No. 97-2187, slip op. at 22-24.

In contrast, as the District Court correctly concluded, Kleissler raised the following issues in the Complaint filed with the federal court:

(1) The South Branch Project, as approved by the Decision Notice/Finding of No Significant Impact, allegedly violates the National Forest Management Act and its regulations, including the requirements that forest projects:

(a) conserve soil and water resources and not allow significant or permanent impairment of the productivity of the land;

14

    (b) provide for and maintain diversity of plant and
    animal communities;

    (c) include adequate measures to prevent the
831<!>adverse modification of the habitat of the

    threatened and endangered species;

    (d) consider potential effects on residual trees and
    adjacent stands; and

    (e) protect against deleterious effects on water
    quality and quantity, wildlife and fish habitat,
    forage production, recreation uses, and aesthetic
    uses.

App. 3152-53; Compl. P 55. Kleissler, No. 97-2187, slip op.
at 24.

    (2) The South Branch Project allegedly violates the
    National Forest Management Act because the
    Forest Service:

    (a) failed to formally consider alternatives to even-
    aged management;

    (b) failed to carefully analyze potential
    environmental, biological, aesthetic and other
    impacts from the proposed even-aged cutting
    and the consistency of the project with the
    multiple use of the area;

    (c) failed to limit the use of even-aged management
    to exceptional circumstances; and

    (d) failed to insure that logging will be carried out
    consistent with the protection of soil, watershed,
    fish, wildlife, recreation, aesthetic resources, and
    regeneration of timber.

App. 3153; Compl. PP 56-57; Kleissler, No. 97-2187, slip op.
at 24-25.

    (3) The Forest Service allegedly violated NEPA by
    failing to prepare an Environmental Impact
    Statement for the South Branch Project, App.
    3154-55; Compl. PP 58-62, failing to study,
    develop and describe an adequate range of
    alternatives and mitigation measures for the South

15

Branch Project, see App. 3156, Compl. PP 66-69, failing to prepare an adequate Environmental Assessment, App. 3156-57; Compl. PP 70-72, and improperly tiering7 the South Branch Environmental Assessment to the Environmental Assessment for the Klondike Opportunity Area. App. 3157; Compl. PP 773-76.

(4) The Forest Service should have considered the cumulative impacts of the South Branch Project and the Mortality II Project. App. 3155-56; Compl. PP 63-65.

(5) The Forest Service violated the APA by acting arbitrarily and capriciously in failing to adequately consider the potential environmental effects of the project and reasonable alternatives. App. 3158-59; Compl. PP 77-81.

Kleissler, No. 97-2187, slip op. at 26-27.

Although closer, nonetheless the challenges raised during the administrative appeal did not sufficiently place the Forest Service on notice, giving it an opportunity to address all of the allegations ultimately raised in federal court. Because the issues raised by Kleissler in federal court are not the same as those raised in the notice of appeal for the South Branch project, Kleissler failed to exhaust the administrative remedies.

III.

Kleissler contends nonetheless that the dismissal should have no effect on the allegations that the Landscape Decision is an unlawful forest-wide management determination and therefore the Minister Watershed and South Branch projects are illegal. Kleissler argues that his landscape corridor claims, regarding areas of the Allegheny National Forest encompassed within the Minister Watershed and South Branch projects, survive because Forest Service policy and rules prohibited Kleissler from

---

7. "Tiering" is the incorporation of documents by reference when preparing environmental assessments for site-specific projects.

16

raising these claims during the administrative process. Specifically, Kleissler contends that "in May 1995 or at any subsequent time [there were no] administrative procedures for appealing an agency action like the Landscape Decision." Appellant's Br. at 45. We disagree.8

A Landscape Corridor Approach provides the general recommendation or framework for implementing Forest Plan objectives. The specific plans for implementing the general recommendation are the individual forest management projects. It is during the planning stage of the site-specific projects that the public is afforded an opportunity "to provide specific comments on each decision." A Landscape Approach to Providing Late-Successional Forests and Associated Functions and Values on the Allegheny National Forest, App. 1843. Because achieving the goals set forth in the Landscape Corridor Approach is necessarily dependent on the site-specific projects, we find the Supreme Court's decision in Ohio Forestry Ass'n, Inc. v. Sierra Club, 118 S. Ct. 1665 (1998), instructive.

In Ohio Forestry, the Court addressed whether an environmental group could maintain a claim alleging that a Land and Resource Management Plan permitted too much logging and clear-cutting in a national forest. See id. at 1668. Without reaching the merits, the Court concluded that the controversy was not yet ripe for judicial review and ordered that the case be remanded and dismissed. See id. at 1673. Before reaching its decision, however, the Court advised that challenges to Land and Resource Management Plans are more appropriately brought as "challenges to

_____

8. We note that this contention contradicts Kleissler's earlier assertion that "the basic issues related to the design and location of the corridor were in fact raised in the two specific project appeals at issue in this case." Plaintiff 's Br. in Support of the Cross-Motion for Summary Judgment on Claims Related to the Landscape Decision at 3; App.7. This argument also contradicts Kleissler's argument that we adopt a broad, flexible and liberal interpretation of Forest Service Regulations. Here, Kleissler seems to encourage a strict and narrow reading of the Forest Service Regulations. Once again, we take neither an expansive nor restrictive approach to the law. Rather, our role is to apply the law with precision.

17

each site-specific logging decision" which could have a preclusive effect on other site-specific plans and therefore "effectively carry the day." Id. at 1671 (citing Lujan v. National Wildlife Fed'n, 467 U.S. 871, 894, 110 S. Ct. 3177, 3191–92 (1990)). Thus, although the Supreme Court did not address the specific issue raised here, we read Ohio Forestry as requiring that objections to Land and Resource Management Plans be made during the administrative process conducted for each site-specific plan. Therefore, contrary to Kleissler's assertions that the Landscape Decision does not fall within 36 C.F.R. SS 215 or section 217,9

_____

9. 36 C.F.R. S 215.7 states:

Decisions subject to appeal

       Only the following decisions are subject to appeal under this part:

       (a) Project and activity decisions documented in a Record of Decision or Decision Notice, including those which, as a part of the project approval decision, contain a nonsignificant amendment to a National Forest Land and Resource Management Plan

       (b) Timber harvest project and activity decisions as described in paragraph 4, Section 31.2 of the Forest Service Handbook 1909.15 which are documented in a decision memo.

36 C.F.R. S 215.8 notes that "(a) [t]he following decisions are not subject to appeal under this part: (1) Project or activity decisions included in a Record of Decision for significant amendment, revision, or approval of a land and resource management plan, appeal of which is governed by 36 C.F.R. section 217."

36 C.F.R. S 217.3 states in pertinent part:

       Decisions subject to appeal.

       (a) The following decisions are subject to appeal under this part:

       (1) Decisions to approve, amend, or revise a National Forest Land and Resource Management Plan including project or activity decisions for which environmental effects have been analyzed and disclosed in a Record of Decision including approval, significant amendments, or revisions of a land and resource management plan.

36 C.F.R. S 217.4 advises that "[t]he following decisions are not subject to appeal under this part. (a) Decisions on projects or activities implementing National Forest Land and Resource Management Plans including project decisions that include a non-significant amendment to

a National Forest Land and Resource Management Plan."

18

we conclude that claims concerning the Landscape Decision's effect on the areas encompassed by the Minister Watershed and South Branch Project areas should have been raised at the same time Kleissler brought his site-specific objections to the attention of the Forest Agency.

Kleissler contends that the Forest Service prohibited him from asserting concerns with the Landscape Decision during the administrative process for the Minister Watershed and South Branch projects. That is not so. Although the District Ranger and Appeal Reviewing Officer encouraged specific comments, the issues raised and addressed were not limited to site-specific comments. In fact, the record shows that the public raised concerns about the Landscape Corridor and that the Forest Service responded to these complaints. See, e.g., Table G-D, App. 2416-18. When the Forest Service did decline to respond to forest wide concerns, or stated that a challenge was beyond the scope of this project, it did so in response to comments general in nature that related to forest or national issues more appropriately addressed at the national level through a change in the laws that set policy for the national forests. See, e.g., Table G-B, App. 2403 Public Comment B.1 ("[t]he issue of the impact of the song bird declines on forest growth needs to be addressed"); Response B.1 ("We believe that what you actually wish to question is the opposite; or, the relationship between the age of forested stands and bird populations, the inference being that an increase in early successional habitat leads to declines in songbird populations. This is a regional and forest-wide issue and beyond the scope of the [Environmental Assessment]. For the past six years, the [Allegheny National Forest] has been conducting breeding bird surveys in 11 different habitats across the forest."); Response B.2 (explaining that comments such as "Don't log public forests" is an example of a comment that must be addressed at the national level).

Moreover, as the Brief for Defendant-Intervenors points out, Kleissler's grievance is not with the Landscape Corridor Approach, per se. The grievance actually concerns implications of the Landscape Corridor on areas outside of and adjacent to the Corridor. Accordingly, these are concerns that could appropriately be raised during the

19

administrative process of the specific site plans. Therefore, our conclusion that Kleissler failed to exhaust his administrative remedies encompasses Kleissler's claims concerning the Landscape Decision as they relate to the Minister Watershed and South Branch project areas.

IV.

In sum, the plain language of the applicable statutes and Code of Federal Regulations precludes an objector to a forest management project from bringing a claim to federal court without first exhausting all administrative remedies. Forest Service regulations mandate that all concerns be placed in writing and submitted to the appropriate reviewing officer. We are not at liberty to relax these standards. A side-by-side comparison of the claims raised during the administrative appeal of the South Branch and Minister Watershed projects shows that Kleissler failed to exhaust the administrative remedies requirements. The District Court properly dismissed these claims. Because Kleissler's challenges to the effects of the Landscape Corridor Approach on areas outlying the Corridor relate to the plans for site-specific projects, we likewise conclude that Kleissler could have, and should have, raised them during the administrative process for the Minister Watershed and South Branch projects. Accordingly, we affirm.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit